UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

DOYLE MIMS,

        Plaintiff,

v.

JOHN DAVIDS et al.,

        Defendants.
_____/

Case No. 1:22-cv-232

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Davids, Bonn, and Simon. The Court will also dismiss, for failure to state a claim, the following claims against Defendant Leuther: (1) Plaintiff's civil conspiracy claims; (2) Plaintiff's First Amendment free exercise claims; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claims concerning violations of MDOC policy. Plaintiff's First Amendment retaliation claim against Defendant Leuther remains in the case. The Court will also

deny Plaintiff's motion to appoint counsel (ECF No. 1, PageID.9), as well as his motion for a preliminary injunction and temporary restraining order (ECF No. 3).

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden John Davids, Deputy Warden Unknown Bonn, Resident Unit Manager (RUM) Unknown Leuther, and Prison Counselor/Assistant RUM Unknown Simon.

Plaintiff alleges that on January 20, 2022, he was placed in unit 1, cell 39, A wing, within ICF's segregation unit. (ECF No. 1, PageID.2.) Upon entering the cell, Plaintiff "immediately noticed an array of Satanic symbols and naked features of women all over the walls." (*Id.*) Plaintiff "immediately asked staff to be placed in another cell." (*Id.*) Plaintiff contends that he is Muslim and did not want to have "another ideology forced upon him." (*Id.*, PageID.3.) He also wanted to be "free from [suggestion]." (*Id.*) Plaintiff alleges that "[b]eing Muslim requires [a] clean environment to give worship per his religious beliefs." (*Id.*) Plaintiff was not permitted to move, and he was refused cleaning products and supplies to clean the walls. (*Id.*)

When Plaintiff used the sink, which is connected to the toilet, he noticed a "black sludge/mold[] looking bacterial substance" inside the toilet. (*Id.*) Plaintiff avers that the substance had a foul odor. (*Id.*) Plaintiff contends further that there were "unknown substances and liquids spilled everywhere." (*Id.*) When he flushes the toilet, the black sludge comes back and "spread[s] up the inside of the toilet." (*Id.*) Plaintiff alleges that this same substance "comes out of the drainage where his water is connected making drinking water and in cell washups [a hazard] out of fear of the black sludge . . . [coming] into contact with his body." (*Id.*) Plaintiff avers that he

2

cannot use his toilet and sink "adequately." (*Id.*) He also contends that there is rust throughout the cell and "dust and dirt all over the floors." (*Id.*) Plaintiff suggests that the "cell was so unclean and gives off an odor so foul [he] was forced to make complaints to staff for cleaning supplies," which were denied. (*Id.*)

That night, Plaintiff realized his cell was "abnormally cold." (*Id.*) He found that the "outside back window was loose and did not have the proper [installation] to keep the window secure and cold air out." (*Id.*) Plaintiff alleges that at night, air would blow through the window and mix with the "air condition[ing] blowing out the vent." (*Id.*) He was forced to sleep fully clothed, "making sleep uncomfortable[]." (*Id.*)

Plaintiff complained first to Defendant Simon, asking him why his cell had "such inhumane living conditions" and if he could receive cleaning supplies. (*Id.*) Defendant Simon refused cleaning supplies. (*Id.*, PageID.4.) Plaintiff asked why he was not allowed to clean his cell. (*Id.*) Defendant Simon responded, "It's been this way for 22 years." (*Id.*) Defendant Simon also referenced an MDOC policy directive. (*Id.*)

Plaintiff requested a copy of the policy directive from the law library and "discovered that [Defendant] Simon had lied." (*Id.*) He claims that staff at ICF were not following the policy because inmates are "permitted to clean 3 times a week." (*Id.*) Plaintiff avers that, instead, cleaning is only allowed once a week on 'Sunday' and level 2 prisoners do[] the cleaning." (*Id.*) Moreover, "that once a week cleaning is only allowed if an inmate takes a shower on that day." (*Id.*) If "he doesn't shower then his cell won't be cleaned." (*Id.*) Plaintiff avers that "for inmates like [him] who choose[] to wash up in cell [they are] not permitted to clean . . . at all unless [they take] a[n] out of cell shower." (*Id.*)

3

Plaintiff then sent a kite to Defendant Leuther to explain the living conditions. (*Id.*) Plaintiff "explained that [Defendant] Simon and [that] inmates [were] in fact allowed to clean [their] own cells." (*Id.*) Plaintiff "demanded cleaning supplies and to clean his cell or he would file a grievance." (*Id.*) Defendant Leuther told Plaintiff that if he grieved the issue "it [would not] go [anywhere] and he would keep [him] in the segregation unit longer." (*Id.*) Plaintiff avers that by this point, he had not been "allowed to clean going on a month." (*Id.*)

Plaintiff explained that he was Muslim and that there was Satanic graffiti and images of naked women all over the walls. (*Id.*, PageID.5.) Plaintiff also complained about the "dirt and filth," and indicated that black sludge splashed up on him when he used the toilet. (*Id.*) Plaintiff also indicated that the cell was cold. (*Id.*) Defendant Leuther responded, "Well deal with it. You shouldn't be in segregation for assaults." (*Id.*) Plaintiff contends that other inmates heard the conversation and started "complaining that it wasn't right they had the same issues also." (*Id.*) Plaintiff discovered that "nearly all the occupied cells [were] experiencing the exact same issues." (*Id.*)

Subsequently, Plaintiff expressed his complaints to Defendant Bonn when he made rounds. (*Id.*) Defendant Bonn said that he would tell maintenance. (*Id.*) Plaintiff avers, however, that none of the issues were ever fixed. (*Id.*) When Defendant Bonn conducted rounds again, Plaintiff asked him to "follow policy and fix the issues." (*Id.*) Defendant Bonn responded, "Well I heard most of [you] are over here for staff [assault], so we are go[ing to] keep it how it is." (*Id.*)

Plaintiff then complained to Defendant Davids "verbally and via kite." (*Id.*) During rounds, Plaintiff told Defendant Davids "that his staff was not following policy." (*Id.*) Defendant Davids acknowledged receiving the kites but stated that he supported "whatever his staff does." (*Id.*) He asked Plaintiff why he was "in the hole." (*Id.*) When Plaintiff answered for staff assault, Defendant

4

Davids stated that staff were likely not taking action for that reason. (*Id.*) Plaintiff responded that Defendant Davids had a duty to fix living conditions and that if he did not, Plaintiff would submit a grievance. (*Id.*) Defendant Davids responded, "This [is] my facility I'll bury you." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.7.) Plaintiff also appears to assert a civil conspiracy claim. (*Id.*, PageID.6.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.7–8.)

## II.     Motion to Appoint Counsel

Plaintiff requests the appointment of counsel because "this case has the potential [to become] a class action suit." (ECF No. 1, PageID.9.) He alleges that the issues affect all inmates in segregation at ICF and that counsel should be appointed "so this can be amended to a class action suit." (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel will, therefore, be denied.

### III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

6

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Civil Conspiracy Under § 1983

In his complaint, Plaintiff suggests that it was "obvious that all the staff [were] cohorts in the engagement of staff corruption." (ECF No. 1, PageID.6.) The Court's liberal reading of the complaint leads the Court to conclude that Plaintiff may be asserting a civil conspiracy claim under § 1983.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. He appears to rely entirely on a highly attenuated inference from the mere fact that he has been subjected to objectionable treatment by Defendants in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough

factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts that would permit the Court to reasonably infer the existence of an agreement among Defendants to violate his constitutional rights, Plaintiff fails to state a plausible claim of conspiracy.

### B. First Amendment Claims

#### 1. Free Exercise

Plaintiff suggests that Defendants violated his First Amendment free exercise rights by keeping him in a cell where the walls were covered with Satanic symbols. (ECF No. 1, PageID.7.) Plaintiff avers that as a Muslim, he requires a "clean environment" for worship "per his religious beliefs." (*Id.*, PageID.3.) The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held; and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220,

8

1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997).

For purposes of his claim, Plaintiff has sufficiently alleged his sincerely-held religious belief by averring that he needs a clean environment for worship. The next consideration is "whether the challenged practice of the prison officials infringes upon the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 20014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

Here, Plaintiff's complaint is devoid of facts from which the Court could infer that his placement in a cell covered with drawings and symbols substantially burdened his religious exercise. Plaintiff provides no facts detailing how exactly his religious exercise was burdened. Plaintiff does not allege that he was unable to conduct prayer or engage in other religious practices. At most, Plaintiff has alleged an inconvenience, which is insufficient for purposes of a First

9

Amendment free exercise claim. Accordingly, Plaintiff's First Amendment free exercise claims will be dismissed.

### 2. Retaliation

Plaintiff also vaguely suggests that staff at ICF "had disregard for the inmates, such as [Plaintiff's] living conditions out of retaliatory reasons." (ECF No. 1, PageID.6.) Plaintiff alleges that Defendant Leuther threatened to keep Plaintiff in segregation longer when he threatened to file a grievance regarding the conditions of the cells. (*Id.*, PageID.4.) He also avers that he "received misconducts for writing grievances on the above issues." (*Id.*, PageID.6.) Plaintiff suggests further that Defendants Davids and Bonn refused to fix the conditions in segregation after learning that Plaintiff was in segregation for committing assaults upon staff. (*Id.*, PageID.5–6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### a. Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected

activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Thus, Plaintiff engaged in protected activity when he told Defendant Leuther that he would be filing a grievance regarding the conditions in segregation. (ECF No. 1, PageID.4.)

Plaintiff's assaults on staff, however, are clearly not examples of protected conduct. *See Kirkendall v. Jaramillo*, No. 16-1500, 2016 WL 11005056, at *2 (6th Cir. 2016) (noting that "assaulting a prison employee is not protected conduct"); *see also Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (summarizing Supreme Court cases holding that, although "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea[,]" "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." (internal citations and quotations omitted)); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection."); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."). Moreover, conduct that violates a legitimate prison regulation is not protected under the First Amendment—or any other amendment. *See Thaddeus-X*, 175 F.3d at 395; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (insolence is not protected conduct). Both assault and battery and assault resulting in serious physical injury are legitimate Class I misconduct violations. *See* MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018). Accordingly, Plaintiff cannot maintain his retaliation claims against Defendants Davids and Bonn, and such claims will be dismissed.

### b. Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

As noted above, Plaintiff vaguely suggests that he received misconducts after filing grievances. Receipt of a misconduct ticket is adverse action sufficient to support a retaliation claim. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007). Here, however, Plaintiff alleges no facts to suggest that the named Defendants are the individuals who issued the misconducts to him. Plaintiff's retaliation claims based upon the receipt of misconducts will, therefore, be dismissed. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (noting that "alleging merely the ultimate fact of retaliation is insufficient").

Plaintiff also contends that Defendant Leuther threatened to keep him in segregation longer if Plaintiff filed a grievance regarding the conditions of the cells. Such a threat constitutes sufficient adverse action for purposes of a retaliation claim. *See Thaddeus-X*, 175 F.3d at 396, 398; *see also Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (noting that the "mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation").

### c. Retaliatory Motive

Plaintiff specifically alleges that Defendant Leuther threatened to keep him in segregation longer if Plaintiff filed a grievance. Such adverse action was temporally proximate to Plaintiff's statement of intent to file a grievance and expressly conditioned on Plaintiff's protected conduct.

Plaintiff, therefore, has adequately alleged a First Amendment retaliation claim against Defendant Leuther. As discussed above, all of his other retaliation claims will be dismissed.

### C. Eighth Amendment Claims Regarding Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46. The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard

includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Cleanliness of Plaintiff's Cell

Plaintiff suggests that his Eighth Amendment rights have been violated because of the conditions within his cell. He avers that he has not been able to access cleaning supplies and that his cell in segregation is cleaned once a week, but only if he takes a shower. Plaintiff alleges that the walls are covered with graffiti, that there is dust all over the cell, and that there is "black sludge" in the toilet. While those conditions are certainly unpleasant, Plaintiff's complaint fails to plausibly assert that he was forced to live in inhumane conditions. *See Logan v. Mich. Dep't of Corr.*, No. 1:21-cv-791, 2022 WL 325404, at *10 (W.D. Mich. Feb. 3, 2022) (concluding the same regarding inmate's Eighth Amendment claim concerning cleanliness of his cell in ICF's segregation unit); *cf. Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475,

14

477 (6th Cir. 2012) (concluding that a prisoner who alleged that he was forced to remain in a cell covered in fecal matter for three days stated a claim under the Eighth Amendment).

Moreover, Plaintiff's allegation that Defendants were deliberately indifferent to the cleanliness of his cell is belied by his acknowledgment that Defendants permitted Plaintiff a weekly opportunity to have his cell cleaned by other prisoners that Plaintiff rejected.

### 2. Cell Temperature

Plaintiff claims further that his cell was "abnormally cold" because cold air came through the window at night. (ECF No. 1, PageID.3.) He contends that he had to sleep fully clothed, "making sleep uncomfortable[]." (*Id.*) While unpleasant, Plaintiff has not alleged facts from which the Court could infer a violation of his Eighth Amendment rights. Plaintiff does not allege that he suffered any deprivations of life's necessities, nor does he allege that he suffered any medical conditions, such as frostbite and other ailments, from the temperature in his cell. Plaintiff simply has not alleged that "he suffered anything more than the usual discomforts of winter." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

In sum, Plaintiff has failed to allege facts suggesting that he suffered from extreme deprivations and that Defendants were deliberately indifferent to such deprivations. Plaintiff's Eighth Amendment claims will, therefore, be dismissed.

### D. Fourteenth Amendment Claims

Plaintiff avers that Defendants violated his Fourteenth Amendment due process rights by "not allowing him to grieve issues." (ECF No. 1, PageID.7.) The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503

F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct allegedly interfering with Plaintiff's grievances did not deprive him of due process. Accordingly, his Fourteenth Amendment claims will be dismissed.

E.  **Violations of MDOC Policy**

Throughout his complaint, Plaintiff contends that Defendants have violated MDOC policy by not permitting inmates in segregation at ICF to clean their cells. Section 1983, however, does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause. Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437

16

(6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegations that Defendants violated MDOC policy, therefore, fail to raise a cognizable federal constitutional claim.

### IV.     Motion for Preliminary Injunction and Temporary Restraining Order

Plaintiff seeks a preliminary injunction and temporary restraining order directing Defendants to preserve evidence by taking photographs of all cells at issue, including the walls, floors, toilets, sinks, windows, vents, doors, and ceilings. (ECF No. 3, PageID.19.) He also seeks an order directing Defendants to allow all inmates in segregation to access cleaning supplies and to clean their cells three times per week. (*Id.*) He also seeks an order prohibiting Defendant Davids from allowing level 2 inmates inside "level 5 segregation cell[s]." (*Id.*)

To determine whether a plaintiff is entitled to preliminary injunctive relief, a court must consider the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *See Ne. Ohio Coal v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). Here, Plaintiff has not met his "initial burden" of demonstrating a strong or substantial likelihood of success on the merits of his Eighth Amendment claims regarding his conditions of confinement. *See NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). The Court, therefore, will deny Plaintiff's motion for a preliminary injunction and temporary restraining order. (ECF No. 3.)

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Davids, Bonn, and Simon will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendant Leuther: (1) Plaintiff's

17

civil conspiracy claims; (2) Plaintiff's First Amendment free exercise claims; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claims concerning violations of MDOC policy. Plaintiff's First Amendment retaliation claim against Defendant Leuther remains in the case. The Court will also deny Plaintiff's motion to appoint counsel (ECF No, 1, PageID.9), as well as his motion for a preliminary injunction and temporary restraining order (ECF No. 3).

An order consistent with this opinion will be entered.

Dated:  March 30, 2022                              /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge