UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOYLE MIMS,

           Plaintiff,                          Case No. 1:22-cv-232

v.                                                  Honorable Jane M. Beckering

JOHN DAVIDS et al.,

           Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In an opinion and order (ECF Nos. 9, 10) entered on March 30, 2022, the Court partially dismissed Plaintiff's complaint for failure to state a claim for relief and denied his motions to appoint counsel and for a preliminary injunction and temporary restraining order. The Court dismissed Plaintiff's claims against Defendants Davids, Bonn, and Simon, and dismissed the following claims against Defendant Luther:[1] (1) Plaintiff's civil conspiracy claims; (2) Plaintiff's First Amendment free exercise claims; (3) Plaintiff's Eighth Amendment claims; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claims regarding violations of MDOC policy. (ECF No. 10.) On March 31, 2022, this matter was stayed and referred to early mediation. (ECF No. 11.)

On April 7, 2022, Plaintiff filed a statement seeking exclusion from the early mediation program. (ECF No. 12.) He also filed a motion for reconsideration (ECF No. 13) of the Court's denial of his motion for a preliminary injunction and temporary restraining order, as well as a

---

[1] Plaintiff initially named RUM Leuther as a Defendant. His amendment, however, clarifies that the correct spelling of this individual's name is Luther.

motion to amend his complaint (ECF No. 14). On April 8, 2022, this matter was removed from early mediation. (ECF No. 16.)

Plaintiff seeks to amend his initial complaint by adding Deputy Warden Traylor as a Defendant and by alleging additional facts regarding events that have occurred with respect to his claims, particularly those that were previously dismissed. (ECF No. 14.) Plaintiff indicates that he "has been denied adequate writing materials" and "does not have a copy of his complaint." (*Id.*, PageID.70.) Plaintiff requests that the Court consider the allegations set forth in his motion to amend in conjunction with his initial complaint. (*Id.*)

Federal Rule of Civil Procedure 15 provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* at 182. The Court noted that the grant or denial of the opportunity to amend was discretionary with the district court and that the district court should provide a justifying reason for its decision. *Id.*

Moreover, under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action. *Planned Parenthood of S. Cal v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997). When a motion seeks to add entirely new claims that occurred before the original pleading, the motion is

properly considered to be a motion to amend, not one to supplement. *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007); *see also United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (within the meaning of Rule 15, supplements relate to events that have transpired *since* the date of the original pleading, while amendments typically rely on matters in place *prior to* the filing of the original pleading).

A lack of dates provided in Plaintiff's original complaint leads the Court to conclude that Plaintiff's proposed new allegations concern events that occurred both prior to the filing of the original pleading and since the date of the original pleading. The Court cannot conclude that it would be entirely futile to grant Plaintiff leave to amend. Moreover, to the extent Plaintiff seeks to supplement with facts relating to events that have transpired since the date of his original complaint, Plaintiff is not seeking to introduce a separate, distinct, and new cause of action. Rather, Plaintiff seeks to amplify his First and Eighth Amendment claims, particularly those that were previously dismissed. The Court, therefore, will grant Plaintiff's motion to amend (ECF No. 14) and will deem the operative pleading to consist of Plaintiff's initial complaint (ECF No. 1) and the supplemental allegations set forth in his motion (ECF No. 14). The Court will also vacate the prior order of partial dismissal (ECF No. 10) to the extent it dismissed certain claims and Defendants.

However, as the Court previously indicated, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.*

*Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendant Traylor. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Davids, Bonn, Simon, and Luther: (1) Plaintiff's civil conspiracy claims; (2) Plaintiff's First Amendment free exercise claims; (3) Plaintiff's Eighth Amendment claims concerning the temperature in his cell; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claims concerning violations of MDOC policy. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against Defendants Davids and Simon based upon the threat to place him on and his subsequent placement on grievance restriction. Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Davids, Bonn, Simon, and Luther, as well as his First Amendment retaliation claims against them premised upon their threats to keep him in segregation for filing grievances and the instant lawsuit, remain in the case.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden John Davids, Deputy Warden Unknown Bonn, Deputy Warden Traylor, Resident Unit Manager (RUM) Unknown Luther, and Prison Counselor/Assistant RUM Unknown Simon.

### A.   Initial Complaint

Plaintiff alleges that on January 20, 2022, he was placed in unit 1, cell 39, A wing, within ICF's segregation unit. (ECF No. 1, PageID.2.) Upon entering the cell, Plaintiff "immediately noticed an array of Satanic symbols and naked features of women all over the walls." (*Id.*) Plaintiff "immediately asked staff to be placed in another cell." (*Id.*) Plaintiff contends that he is Muslim

and did not want to have "another ideology forced upon him." (*Id.*, PageID.3.) He also wanted to be "free from [suggestion]." (*Id.*) Plaintiff alleges that "[b]eing Muslim requires [a] clean environment to give worship per his religious beliefs." (*Id.*) Plaintiff was not permitted to move, and he was refused cleaning products and supplies to clean the walls. (*Id.*)

When Plaintiff used the sink, which is connected to the toilet, he noticed a "black sludge/mold[] looking bacterial substance" inside the toilet. (*Id.*) Plaintiff avers that the substance had a foul odor. (*Id.*) Plaintiff contends further that there were "unknown substances and liquids spilled everywhere." (*Id.*) When he flushes the toilet, the black sludge comes back and "spread[s] up the inside of the toilet." (*Id.*) Plaintiff alleges that this same substance "comes out of the drainage where his water is connected making drinking water and in cell washups [a hazard] out of fear of the black sludge . . . [coming] into contact with his body." (*Id.*) Plaintiff avers that he cannot use his toilet and sink "adequately." (*Id.*) He also contends that there is rust throughout the cell and "dust and dirt all over the floors." (*Id.*) Plaintiff suggests that the "cell was so unclean and gives off an odor so foul [he] was forced to make complaints to staff for cleaning supplies," which were denied. (*Id.*)

That night, Plaintiff realized his cell was "abnormally cold." (*Id.*) He found that the "outside back window was loose and did not have the proper [installation] to keep the window secure and cold air out." (*Id.*) Plaintiff alleges that at night, air would blow through the window and mix with the "air condition[ing] blowing out the vent." (*Id.*) He was forced to sleep fully clothed, "making sleep uncomfortable[]." (*Id.*)

Plaintiff complained first to Defendant Simon, asking him why his cell had "such inhumane living conditions" and if he could receive cleaning supplies. (*Id.*) Defendant Simon refused cleaning supplies. (*Id.*, PageID.4.) Plaintiff asked why he was not allowed to clean his cell. (*Id.*)

5

Defendant Simon responded, "It's been this way for 22 years." (*Id.*) Defendant Simon also referenced an MDOC policy directive. (*Id.*)

Plaintiff requested a copy of the policy directive from the law library and "discovered that [Defendant] Simon had lied." (*Id.*) He claims that staff at ICF were not following the policy because inmates are "permitted to clean 3 times a week." (*Id.*) Plaintiff avers that, instead, cleaning is only allowed once a week on 'Sunday' and level 2 prisoners do[] the cleaning." (*Id.*) Moreover, "that once a week cleaning is only allowed if an inmate takes a shower on that day." (*Id.*) If "he doesn't shower then his cell won't be cleaned." (*Id.*) Plaintiff avers that "for inmates like [him] who choose[] to wash up in cell [they are] not permitted to clean . . . at all unless [they take] a[n] out of cell shower." (*Id.*)

Plaintiff then sent a kite to Defendant Luther to explain the living conditions. (*Id.*) Plaintiff "explained that [Defendant] Simon and [that] inmates [were] in fact allowed to clean [their] own cells." (*Id.*) Plaintiff "demanded cleaning supplies and to clean his cell or he would file a grievance." (*Id.*) Defendant Luther told Plaintiff that if he grieved the issue "it [would not] go [anywhere] and he would keep [him] in the segregation unit longer." (*Id.*) Plaintiff avers that by this point, he had not been "allowed to clean going on a month." (*Id.*)

Plaintiff explained that he was Muslim and that there was Satanic graffiti and images of naked women all over the walls. (*Id.*, PageID.5.) Plaintiff also complained about the "dirt and filth," and indicated that black sludge splashed up on him when he used the toilet. (*Id.*) Plaintiff also indicated that the cell was cold. (*Id.*) Defendant Luther responded, "Well deal with it. You shouldn't be in segregation for assaults." (*Id.*) Plaintiff contends that other inmates heard the conversation and started "complaining that it wasn't right they had the same issues also." (*Id.*)

6

Plaintiff discovered that "nearly all the occupied cells [were] experiencing the exact same issues." (*Id.*)

Subsequently, Plaintiff expressed his complaints to Defendant Bonn when he made rounds. (*Id.*) Defendant Bonn said that he would tell maintenance. (*Id.*) Plaintiff avers, however, that none of the issues were ever fixed. (*Id.*) When Defendant Bonn conducted rounds again, Plaintiff asked him to "follow policy and fix the issues." (*Id.*) Defendant Bonn responded, "Well I heard most of [you] are over here for staff [assault], so we are go[ing to] keep it how it is." (*Id.*)

Plaintiff then complained to Defendant Davids "verbally and via kite." (*Id.*) During rounds, Plaintiff told Defendant Davids "that his staff was not following policy." (*Id.*) Defendant Davids acknowledged receiving the kites but stated that he supported "whatever his staff does." (*Id.*) He asked Plaintiff why he was "in the hole." (*Id.*) When Plaintiff answered for staff assault, Defendant Davids stated that staff were likely not taking action for that reason. (*Id.*) Plaintiff responded that Defendant Davids had a duty to fix living conditions and that if he did not, Plaintiff would submit a grievance. (*Id.*) Defendant Davids responded, "This [is] my facility I'll bury you." (*Id.*)

    **B.**    **Amendment**

Plaintiff alleges that when he went to mail his initial complaint, Defendant Simon took it to his office after it was sealed and opened it. (ECF No. 14, PageID.70.) Defendant Simon came to Plaintiff's cell and stated, "So you suing me huh?" (*Id.*) Plaintiff asked him how he knew, and Defendant Simon told him that he had opened the mail and read it. (*Id.*) Plaintiff "got hostile and told [Defendant] Simon he would file a grievance for tampering with federal mail." (*Id.*) Defendant Simon responded that he would make sure Plaintiff got placed on modified grievance access. (*Id.*) Plaintiff began yelling, and Defendant Simon said, "Yea and I'm [going to] make sure you don't ever move out [of] this cell." (*Id.*)

Plaintiff talked to Defendant Bonn during unit rounds on March 29, 2022. (*Id.*, PageID.71.) Plaintiff told Defendant Bonn that the "water [was] now coming out rusty, and with sometimes black sludge." (*Id.*) Plaintiff avers that he has had to submit healthcare requests for stomach pains and headaches after drinking and washing with the water. (*Id.*) Plaintiff indicates that he "can't sleep sometimes due to the pains." (*Id.*) Plaintiff alleges further that he has experienced rashes and boils on his buttocks from the black sludge in the toilet, and that he has "developed a cough/respiratory infection from breathing in the toxic sludge smell coming from his toilet." (*Id.*)

Defendant Bonn called Defendant Luther over and asked if Plaintiff "was the inmate that had everybody filing the grievances." (*Id.*) Defendant Luther responded that Plaintiff was, and Defendant Bonn told Defendant Luther to make sure that Plaintiff's cell was never cleaned if Plaintiff refused to sign off on his grievance. (*Id.*) Plaintiff "became hostile" and asked why. (*Id.*) Defendant Bonn responded that Plaintiff would be in segregation as long as Defendant Bonn "had a say." (*Id.*) Plaintiff yelled at Defendant Bonn that he needed to be moved because of the sores and possible respiratory infection he was experiencing. (*Id.*) Plaintiff asked if he could move to an open cell, and Defendants Bonn and Luther stated, "Until you sign off or dismiss that complaint you will be right here in segregation." (*Id.*)

Plaintiff contends that the B wing has received one cell cleaning per week, but that he and other inmates in A wing have not been provided cleaning supplies "or an alternative resolution." (*Id.*) He asserts that he has "no adequate water to drink or wash with, [and that he is not] able to pass bowel [movements] without further infecting his buttocks." (*Id.*, PageID.72.) Plaintiff avers that he "has to sleep with a mask out of fear of breathing in toxic fumes." (*Id.*) He is scared to leave his cell because of "recent threats of violence by staff and [Defendant] Luther." (*Id.*) Plaintiff

8

has also "identified fecal/feces matter in the corner of his cell along with blood splatters[,] both [of] which do[] not belong to him." (*Id.*)

Plaintiff had a conversation with Defendant Davids and brought these issues to his attention. (*Id.*) He also told Defendant Davids that his staff was retaliating against Plaintiff for his complaint and recent grievances. (*Id.*) Defendant Davids told Plaintiff that unless he dismissed his complaint and left his grievances alone, he would not help him and supported what the staff did. (*Id.*) He also told Plaintiff that he had placed him on grievance restriction because he and Defendant Simon "felt it beneficial for our facility." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights. (ECF No. 1, PageID.7.) Plaintiff also appears to assert a civil conspiracy claim. (*Id.*, PageID.6.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.7–8.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, the Court previously dismissed Plaintiff's civil conspiracy claims, First Amendment free exercise claims, Fourteenth Amendment claims, and claims regarding violations of MDOC policy. (ECF No. 10.) Plaintiff's amended complaint does not allege facts warranting reconsideration of the dismissal of these claims. Rather, the amended complaint alleges facts amplifying Plaintiff's First Amendment retaliation and Eighth Amendment claims. Plaintiff also adds Deputy Warden Traylor as a Defendant. The Court, therefore, considers those below.

### A.     Defendant Traylor

Plaintiff's amended complaint is completely devoid of any allegations regarding Defendant Traylor. Where an individual is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se*

complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). A claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The Court, therefore, will dismiss Plaintiff's claims against Defendant Traylor.

**B.     First Amendment Retaliation Claims**

Plaintiff also suggests that staff at ICF "had disregard for the inmates, such as [Plaintiff's] living conditions out of retaliatory reasons." (ECF No. 1, PageID.6.) Plaintiff alleges that Defendant Luther threatened to keep Plaintiff in segregation longer when he threatened to file a grievance regarding the conditions of the cells. (*Id.*, PageID.4.) He also avers that he "received misconducts for writing grievances on the above issues." (*Id.*, PageID.6.) Plaintiff suggests further that Defendants Davids and Bonn refused to fix the conditions in segregation after learning that Plaintiff was in segregation for committing assaults upon staff. (*Id.*, PageID.5–6.) The Court previously determined that Plaintiff had set forth a plausible retaliation claim against Defendant Luther, but that he could not maintain retaliation claims against Defendants David and Bonn because his assaults upon staff were not examples of protected conduct. (ECF No. 9, PageID.46–49.) The Court also dismissed any retaliation claims based upon Plaintiff's receipt of misconducts because he had not alleged facts suggesting that the named Defendants were the individuals who issued the misconducts. (*Id.*) Plaintiff's amended complaint sets forth no basis for reconsideration of those claims.

11

In his amended complaint, Plaintiff now alleges that Defendant Simon threatened to place him on modified grievance access and threatened to make sure he never left his current cell assignment if Plaintiff filed a grievance regarding Defendant Simon tampering with his mail. (ECF No. 14, PageID.70.) Plaintiff also contends that Defendant Bonn indicated that Plaintiff would never have his cell cleaned if he refused to sign off on his grievances and that he would be in segregation if he did not have his complaint dismissed. (*Id.*, PageID.71.) Defendants Bonn and Luther indicated that Plaintiff would stay in segregation "until [he] sign[s] off or dismiss[es] that complaint." (*Id.*) Finally, Plaintiff appears to suggest that Defendant Davids placed him on modified grievance access in retaliation for Plaintiff's grievances and complaint. (*Id.*, PageID.72.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

      a.    **Protected Conduct**

Filing a civil rights lawsuit constitutes protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Moreover, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured

at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Plaintiff, therefore, clearly engaged in protected activity by filing the instant lawsuit, filing grievances, and telling Defendant Simon that he would be filing a grievance regarding the alleged mail tampering.

### b. Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (emphasis in original).

Plaintiff contends that Defendants Luther, Bonn, and Simon threatened to keep him in segregation longer if Plaintiff filed grievances regarding the conditions of the cells and Defendant Simon's alleged mail tampering. Moreover, Defendants Luther, Bonn, and Davids suggested that Plaintiff would not be removed from segregation unless he withdrew his instant lawsuit. Such threats constitute sufficient adverse action for purposes of a retaliation claim. *See Thaddeus-X*, 175 F.3d at 396, 398; *see also Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (noting that the "mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation").

Plaintiff also avers that Defendant Simon threatened to have him placed on grievance restriction and that Defendant Davids did have him placed on grievance restriction in response to

his grievances and lawsuit. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen Plaintiff's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)). Plaintiff, therefore, cannot maintain his retaliation claims against Defendants Simon and Davids for threatening to place and having him placed on grievance restriction. Those claims, therefore, will be dismissed.

###### c. **Retaliatory Motive**

Plaintiff specifically alleges that Defendants Luther, Bonn, and Simon threatened to keep him in segregation longer if Plaintiff filed grievances regarding the conditions of the cells and Defendant Simon's alleged mail tampering. Moreover, Defendants Luther, Bonn, and Davids suggested that Plaintiff would not be removed from segregation unless he withdrew his instant lawsuit. Such adverse actions were temporally proximate to Plaintiff's statement of intent to file a grievance, as well as to his filing of other grievances and the instant lawsuit. Plaintiff, therefore, has adequately alleged First Amendment retaliation claims against Defendants Luther, Bonn, Simon, and Davids premised upon these threats. As discussed above, all other retaliation claims will be dismissed.

C.      **Eighth Amendment Claims Regarding Conditions of Confinement**

In his initial complaint, Plaintiff asserted Eighth Amendment claims based upon the conditions within his cell as well as the cell temperature. The Court concluded that Plaintiff had failed to state a claim. (ECF No. 9, PageID.50–51.) With respect to the conditions, Plaintiff alleged that he "has not been able to access cleaning supplies and that his cell in segregation is cleaned once a week, but only if he takes a shower." (*Id.*, PageID.50.) Plaintiff also alleged that the walls "are covered in graffiti, that there is dust all over the cell, and that there is 'black sludge' in the toilet." (*Id.*) The Court noted that, while unpleasant, such allegations were insufficient to state an Eighth Amendment claim.

Plaintiff's amended complaint does not lead the Court to conclude that reconsideration of the dismissal of his claim based upon the cell temperature is warranted. Rather, Plaintiff's amended complaint amplifies his claim concerning the cell conditions. The Court, therefore, will consider whether Plaintiff's complaint sets forth a plausible Eighth Amendment conditions of confinement claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes*, 452 U.S. at 345–46. The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

15

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff suggests that his Eighth Amendment rights have been violated because of the conditions within his cell. He avers that he has not been able to access cleaning supplies and that

16

his cell in segregation is cleaned once a week, but only if he takes a shower. Plaintiff alleges that the walls are covered with graffiti, that there is dust all over the cell, and that there is "black sludge" in the toilet. Plaintiff suggests that he has experienced stomach pains and headaches because the water in his cell comes out rusty and sometimes with black sludge. (ECF No. 14, PageID.71.) He also alleges that he has suffered rashes and boils from the black sludge in the toilet. (*Id.*) Plaintiff contends that he suffers respiratory infections, and that he and other inmates on A wing are not permitted cleaning supplies or any other way of cleaning their cells. (*Id.*) Plaintiff also indicates that there are feces and blood spatter in the corner of his cell from the previous occupant. (*Id.*, PageID.72.) Plaintiff repeatedly notified Defendants Bonn, Simon, Davids, and Luther about these conditions, but nothing was done. Given these allegations, the Court concludes that Plaintiff's amended complaint sets forth plausible Eighth Amendment claims regarding the conditions in his cell against Defendants Bonn, Simon, Davids, and Luther.

### III. Motion for Reconsideration

Plaintiff has also filed a motion (ECF No. 13) seeking reconsideration of the denial of his motion for a preliminary injunction and temporary restraining order (ECF No. 3). Plaintiff believes that his amended complaint now provides a "substantial [basis]" for his request for preliminary injunctive relief. (ECF No. 13, PageID.66.) As previously noted, Plaintiff seeks a preliminary injunction and temporary restraining order directing Defendants to preserve evidence by taking photographs of all cells at issue, including the walls, floors, toilets, sinks, windows, vents, doors, and ceilings. (ECF No. 3, PageID.19.) He also seeks an order directing Defendants to allow all inmates in segregation to access cleaning supplies and to clean their cells three times per week. (*Id.*) He also seeks an order prohibiting Defendant Davids from allowing level 2 inmates inside "level 5 segregation cell[s]." (*Id.*)

17

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment. *Id.*; *see also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). Western District of Michigan Local Civil Rule 7.4(a) provides that "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted." Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof." *Id.*

To determine whether a plaintiff is entitled to preliminary injunctive relief, a court must consider the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *See Ne. Ohio Coal v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).

The Court previously denied Plaintiff's motion for a preliminary injunction and temporary restraining order after determining that he had not met his initial burden of demonstrating a strong or substantial likelihood of success on the merits of his Eighth Amendment claims. (ECF No. 9, PageID.53.) Plaintiff's amended complaint does not lead the Court to reconsider that determination. Moreover, the public welfare militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286–87 (6th Cir. 1988). That showing has not been made. The Court, therefore, will deny Plaintiff's motion for reconsideration (ECF No. 13).

## Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion to amend (ECF No. 14) and deems the operative amended complaint to consist of Plaintiff's initial complaint (ECF No. 1)

and the supplemental facts set forth in his motion to amend (ECF No. 14). Given Plaintiff's amended complaint, the Court will vacate its prior order of partial dismissal (ECF No. 10) to the extent it dismissed certain claims and Defendants.

Having conducted the review of Plaintiff's amended complaint required by the Prison Litigation Reform Act, the Court will dismiss Defendant Traylor for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendants Davids, Bonn, Luther, and Simon: (1) Plaintiff's civil conspiracy claims; (2) Plaintiff's First Amendment free exercise claims; (3) Plaintiff's Eighth Amendment claims concerning the temperature in his cell; (4) Plaintiff's Fourteenth Amendment claims; and (5) Plaintiff's claims concerning violations of MDOC policy. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against Defendants Davids and Simon based upon the threat to place him on and his subsequent placement on grievance restriction. Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Davids, Bonn, Simon, and Luther, as well as his First Amendment retaliation claims against them premised upon their threats to keep him in segregation for filing grievances and the instant lawsuit, remain in the case. Plaintiff's motion for reconsideration (ECF No. 13) of the denial of his motion for a preliminary injunction and temporary restraining order (ECF No. 3) will be denied.

An order consistent with this opinion will be entered.

Dated:   May 11, 2022                               /s/ Jane M. Beckering
                                                                          Jane M. Beckering
                                                                          United States District Judge