UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOYLE MIMS,

    Plaintiff,

v.

JOHN DAVIDS, *et al.*,

    Defendants.
_____/

Case No. 1:22-cv-232

Hon. Jane M. Beckering

# REPORT AND RECOMMENDATION

This is a *pro se* civil rights lawsuit brought by Doyle Mims (referred to as "plaintiff" or "Mims"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Four defendants remain in this lawsuit: Warden John Davids; Deputy Warden Unknown Bonn; Prison Counselor/Assistant Resident Unit Manager (RUM) Eric Simon; and RUM Unknown Luther. This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 28).

    **I.**     **Mims' claims**

After reviewing Mims' complaint and supplements, the Court found that he had two types of claims against the remaining defendants: (1) Eighth Amendment conditions of confinement claims; and (2) First Amendment retaliation claims premised on defendants' threats to keep him in segregation for filing grievances and the instant lawsuit. Opinion (ECF No. 19, PageID.87). Plaintiff's allegations involve his placement in a segregation cell on January 20, 2022. *Id.* The Court summarized the Eighth Amendment claims as follows:

> Plaintiff suggests that his Eighth Amendment rights have been violated because of the conditions within his cell. He avers that he has not been able to access cleaning supplies and that his cell in segregation is cleaned once a week, but

1

>only if he takes a shower. Plaintiff alleges that the walls are covered with graffiti, that there is dust all over the cell, and that there is "black sludge" in the toilet. Plaintiff suggests that he has experienced stomach pains and headaches because the water in his cell comes out rusty and sometimes with black sludge. (ECF No. 14, PageID.71.) He also alleges that he has suffered rashes and boils from the black sludge in the toilet. (*Id.*) Plaintiff contends that he suffers respiratory infections, and that he and other inmates on A wing are not permitted cleaning supplies or any other way of cleaning their cells. (*Id.*) Plaintiff also indicates that there are feces and blood spatter in the corner of his cell from the previous occupant. (*Id.*, PageID.72.) Plaintiff repeatedly notified Defendants Bonn, Simon, Davids, and Luther about these conditions, but nothing was done. Given these allegations, the Court concludes that Plaintiff's amended complaint sets forth plausible Eighth Amendment claims regarding the conditions in his cell against Defendants Bonn, Simon, Davids, and Luther.

*Id.* at PageID.99-100.

In addition, the Court summarized Mims' First Amendment retaliation claims as follows:

>Plaintiff specifically alleges that Defendants Luther, Bonn, and Simon threatened to keep him in segregation longer if Plaintiff filed grievances regarding the conditions of the cells and Defendant Simon's alleged mail tampering. Moreover, Defendants Luther, Bonn, and Davids suggested that Plaintiff would not be removed from segregation unless he withdrew his instant lawsuit. Such adverse actions were temporally proximate to Plaintiff's statement of intent to file a grievance, as well as to his filing of other grievances and the instant lawsuit. Plaintiff, therefore, has adequately alleged First Amendment retaliation claims against Defendants Luther, Bonn, Simon, and Davids premised upon these threats. As discussed above, all other retaliation claims will be dismissed.

*Id.* at PageID.99.

## II.    Legal standard

### A.    Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

>stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

>The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

Defendants contend that Mims failed to exhaust his claims against them. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response,

4

or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III. Discussion

Defendants presented evidence that Mims did not exhaust any grievances prior to filing this lawsuit, pointing out that,

> Mims' Step III Grievance Report shows that although he had pursued Step III grievances arising out of ICF that he originally filed at Step I in February and March 2022, none of these grievances were completed through Step III when he filed his complaint.

Defendants' Brief (ECF No. 29, PageID.129); MDOC Prisoner Step III Grievance Report (ECF No. 29-3). Defendants explain that,

> Here, Mims failed to exhaust his claims against MDOC Defendants Davids, Bonn, Luther, or Simon. The PLRA "makes exhaustion a precondition to filing an action in federal court." *Nussle*, 534 U.S. at 523. This means that the grievances which were pending when Mims filed his complaint cannot serve to exhaust his claims. *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (explaining that a plaintiff cannot exhaust administrative remedies "during the pendency of the action"). Because Mims' ICF grievances were not completed at Step III until April 13, 2022—after he had filed his original complaint and his supplement to his complaint—these grievances failed to exhaust the claims in his original complaint.

Defendants' Brief at PageID.134.

In addition, the grievances that Mims did file before the lawsuit were rejected and could not be properly exhausted:

> Moreover, these six grievances were all rejected at some point during the grievance process (Ex. 2 at 3-4), so they could not have exhausted any claims.
>
> Mims may attempt to use his supplement to cure the exhaustion issue, but such an argument would be without merit. *In Mattox v. Edelman*, 851 F.3d 583, 591-95 (6th Cir. 2017), the Sixth Circuit addressed the exhaustion requirement when a prisoner seeks to amend or supplement the complaint with new claims which arose after the filing of the complaint. Reviewing its earlier cases, the Court held that a prisoner may add new claims that were exhausted after the filing of the original complaint, if the prisoner had fully exhausted the new claims and if the original complaint contained at least one fully exhausted claim. *Id*. Here, as

> discussed above, Mims did not exhaust any claims when he filed his original complaint, so he could not add any claims that may have been exhausted since he filed his original complaint. In short, Mims failed to exhaust his administrative remedies against MDOC Defendants, and the Court should dismiss this lawsuit.

*Id*. at PageID.134-135.

In his response, Mims does not contest the record, which reflects that he did not exhaust any grievances prior to filing this lawsuit. Rather, Mims contends that administrative remedies were unavailable and that he did not need to properly exhaust grievances before filing this lawsuit. In a declaration, Mims states in part that,

> I begun filing grievances orally and written on 1-20-22.  My and other inmates grievances was and has been getting arbitrarily rejected to curb staff corruption.  From 1-20-22 till 2-18-22, I made oral grievances to c/o Migrant, C/O Sperry, C/o Way, Sgt. Morgan and P.C. Simon.  I was being threatened by P.C. Simon and other staff,  that I better not file a grievance, or I would recieve [sic] a misconduct ticket and be kept in segregation.

Mims' Decl. (ECF No. 32-17, PageID.190).

As an initial matter, there is no such thing as filing an "oral" grievance. *See* PD 03.02.130.  While a prisoner is required to attempt to resolve an issue before filing a grievance, the policy directive requires a prisoner to file a written grievance.  *Id*.  Accordingly, Mims' contention that he exhausted "oral" grievances is meritless.

Next, Mims contends that the grievance procedure was unavailable, stating in part

> I felt due to the lack of cooperation and continuous threats of long term segregation and false misconducts it would be unsafe and unwise to write Grievances and risk any type of harsh actions toward me so I concluded my remedies exhuasted [sic].

*Id*. at PageID.191.  Mims' claims do not establish that the grievance procedure was unavailable.

Mims signed and dated the original complaint (ECF No. 1) on March 7, 2022.  The complaint was docketed in this Court on March 11, 2022.   The incidents alleged in the complaint began on January 20, 2022, and continued through at least April 7, 2022, when Mims filed a motion

6

to amend the complaint (ECF No. 14).  The record reflects that Mims filed six grievances after the alleged incident on January 20, 2022 and before he signed the original complaint on March 7, 2022: ICF-22-02-0148-28B (filed Feb. 2, 2022) ("148"); ICF-22-02-0207-28B (filed Feb. 23, 2022) ("207"); ICF-22-02-0218-28B (filed Feb. 24, 2022) ("218"); ICF-22-02-0220-28E (filed Feb. 24, 2022) ("220"); ICF-22-02-0219-28C (filed Feb. 24, 2022) ("219"); and, ICF-22-03-0235-28B (filed March 1, 2022) ("235").  *See* MDOC Step III Grievance Report at PageID.151-152.

Contrary to Mims' claims, this record demonstrates that the grievance procedure was available before he filed this lawsuit.  This Court has rejected a prisoner's claim that the exhaustion procedure was unavailable when the MDOC records demonstrate that the grievance procedure was in fact available and that the prisoner filed grievances:

> As the Magistrate Judge remarked (and as Plaintiff points out in his objections) the grievance process may be considered unavailable in certain situations, including "where prison administrators thwart an inmate from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, — U.S. —, 136 S. Ct. 1850, 1860, 195 L.Ed.2d 117 (2016). If the grievance process at issue is deemed unavailable, failure to exhaust poses no barrier to the inmate's claim. In the Report and Recommendation, the Magistrate Judge reasons that the grievance process was indisputably available to Plaintiff because Plaintiff actually used it for numerous grievances, including grievances against the named defendants, both before and after the events and alleged intimidation at issue in his lawsuits. Other courts have employed similar reasoning to determine availability as a matter of law. *See King v. Puershner*, Case No. 1:17-cv-1373, at *8-*9 (S.D.N.Y. Sept. 19, 2019) (grievance process available to plaintiff where the plaintiff had filed grievances in 48 instances both before and after the event triggering the unexhausted claim).
>
> Plaintiff argues this reasoning is flawed because it is possible for a prisoner to feel free to pursue grievances in certain areas, yet feel intimidated from pursuing other claims through the grievance process. That may be theoretically true in some cases but the reality here leaves no disputed issue of fact on availability. The fact of the matter is that shortly after the events in these cases, Plaintiff filed grievances about other things. And some of these grievances were filed against the same defendants Plaintiff alleges intimidated him from filing grievances related to these cases. Moreover, the same intimidation allegations Plaintiff makes to avoid exhaustion were used by Plaintiff to support a claim of imminent danger to avoid the three-strikes rule that would otherwise bar his claims from proceeding. Nine

7

months have passed but no harm has come to Plaintiff. Indeed, Plaintiff has continued to file new lawsuits against prison officials. *See, e.g., Sango v. Goinns*, Case No. 2:20-cv-196 (W.D. Mich. filed Oct. 2, 2020); *Sango v. Goinns*, Case No. 2:20-cv-205 (W.D. Mich. filed Oct. 9, 2020); *Sango v. Fluery*, Case No. 2:20-cv-213 (W.D. Mich. filed Oct. 15, 2020); *Sango v. Scheoder*, Case No. 2:21-cv-0007 (W.D. Mich. filed Jan. 11, 2021).

On this record, it beggars belief that Plaintiff was intimidated from filing a grievance in these matters and that the grievance system was unavailable to him.

*Sango v. Eubanks*, No. 2:20-cv-160, 2021 WL 2217372 at *2-3 (W.D. Mich. June 2, 2021), *affirmed sub nom. Sango v. Fleury*, No. 21-2597, 2022 WL 2163519 (6th Cir. May 4, 2022) (footnote omitted).[1]

Contrary to Mims' claim that the grievance procedure was unavailable, the MDOC records reflect that Mims was disciplined in February 2022 for filing *too many* grievances. Mims was provided a copy Warden John Davids' Memorandum dated February 28, 2022 (about one week before Mims filed the original complaint), which advised Mims that he had filed an excessive number of grievances within the last 30-day period, and that he was being placed on modified access from March 3, 2022 through June 1, 2022. *See* Warden's Memorandum (ECF No. 32-11, PageID.184). In support of this decision, the Warden referenced five grievances filed within the past 30-days that were rejected or in which the prisoner was found guilty of misconduct for filing an unfounded grievance, *i.e.*, Grievances 148, 207, 218, 219, and 220. *Id*. To paraphrase the Sixth Circuit's decision in *Sango*, "[Mim's] claim that he was unable to utilize the grievance system is belied by his record of grievances." *Sango*, 2022 WL 2163519 at *2. For all of these reasons, defendants' motion for summary judgment on the basis of exhaustion should be granted.

---

[1] In addressing the prisoner's (Sango's) claims on appeal, the Sixth Circuit found that: "Sango's claim that he was unable to utilize the grievance system is belied by his record of grievances. Between August 3, 2020, and December 17, 2020, Sango filed fifteen grievances. Before filing his first lawsuit at the end of August 2020, Sango filed seven grievances in a matter of less than two weeks." *Sango*, 2022 WL 2163519 at *2.

8

### IV.     Recommendation

Accordingly, I respectfully recommend that defendants' motion for summary judgment (ECF No. 28) be **GRANTED** and that this action be dismissed.

Dated:  December 14, 2022                                       /s/ Ray Kent
                                                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).